JOHN S. LEONARDO
United States Attorney
District of Arizona

DAVID A. PIMSNER
Assistant U.S. Attorney
Arizona State Bar No. 007480
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
david.pimsner@usdoj.gov

FILED
OCT 29 2012
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | CR-10-1463-1-PHX-PGR |
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| Floyd D. Stilwell, | |
| Defendant. | |

Plaintiff, United States of America, and the defendant, Floyd D. Stilwell, hereby agree to dispose of this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to Count 1 of the indictment charging the defendant with Conspiracy to Violate the Arms Export Control Act, in violation of 18 United States Code (U.S.C.) § 371 and 22 U.S.C. § 2778, a Class D felony offense.

2. **MAXIMUM PENALTIES**

   a.   A violation of 18 U.S.C. § 371, is punishable by a maximum fine of $250.000, a maximum term of imprisonment of 5 years, or both, and a term of supervised release of up to three years.

   b.   According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

   (1)   make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

   (2)   pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

    (3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

    (4) pay upon conviction a $100.00 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013(a)(2)(A).

  c. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

  d. The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if defendant is a recently naturalized United States citizen or is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including defendant's attorney or the district court, can predict to a certainty the effect of defendant's conviction on defendant's immigration status in the United States. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is defendant's automatic removal from the United States.

**3.** **AGREEMENTS REGARDING SENTENCING**

  a. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the applicable advisory sentencing guideline base offense level is a level 26 pursuant to U.S.S.G. §§ 2C1.1(c)(1) and 2M5.2(a)(1).

  b. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant's sentence shall not exceed the low end of the defendant's final advisory guideline range. Additionally, the United States and the defendant stipulate that the defendant shall pay a fine in the amount of $250,000.00.

  c. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G.§ 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will recommend an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

  d. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that, prior to sentencing, defendant, Floyd D. Stilwell, shall divest himself of all ownership interest in Marsh Aviation Company. However, defendant, Floyd D. Stilwell, may have a consultant's role with Marsh Aviation Company that relates solely to the company's domestic or foreign business for which no federal export or brokering licenses are required.

**4. <u>AGREEMENT TO DISMISS OR NOT TO PROSECUTE</u>**

  a. Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States shall dismiss Count 2 in CR-10-1463-1-PHX-PGR against defendant, Floyd D. Stilwell. Additionally, the government agrees to dismiss Counts 1 and 2 against Marsh Aviation Company without prejudice at the time of the defendant's change of plea. The dismissal against Marsh Aviation Company shall become with prejudice upon sentencing of Floyd D. Stilwell or upon any other motion by the government terminating the prosecution of the defendant.

  b. This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office including the U.S. Department of State. The United States Attorney's Office for the District of Arizona is not aware of any other criminal investigations pertaining to Floyd D. Stilwell or Marsh Aviation Company.

**5. <u>COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION</u>**

  If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated against defendant, Floyd D. Stilwell. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

6.   **WAIVER OF DEFENSES AND APPEAL RIGHTS**

Providing the defendant's sentence is consistent with this agreement, the defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under Title 18, United States Code, Section 3582(c). The defendant acknowledges that if the Court has sentenced the defendant according to the terms of this agreement, this waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case.

7.   **DISCLOSURE OF INFORMATION**

a.   The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

4

1    b.    Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

    c.    The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

    (1)    criminal convictions, history of drug abuse, and mental illness; and

    (2)    financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

## 8. FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS

<u>Specific Property Forfeited</u>. Defendant, Floyd D. Stilwell, agrees that the property listed herein is property involved in the criminal acts described in Count 1, or is property traceable to such property and is therefore subject to forfeiture pursuant to 18 United States Code Section 371; Title 22, United States Code Section 2778(b)(2); and 18 United States Code Section 982(a)(1): All rights, title, and interest in any contract to overhaul and upgrade T-76 military aircraft engines for the OV-10 Bronco aircraft, to reflect that the engines were civilian TPE 331 aircraft engines, between Floyd D. Stilwell, doing business in the name of any business enterprise, and members of the Venezuelan Air Force related to the items described in the indictment specifically including:

    A.    Two T-76 military aircraft engines for the OV-10 Bronco aircraft; and

    B.    Aircraft parts for twelve T-76 military aircraft engines for the OV-10 Bronco aircraft.

<u>Form of the Preliminary Order of Forfeiture:</u> Defendant Floyd D. Stilwell agrees to the form of the Preliminary Order of Forfeiture presented to the Court with the Plea Agreement and urges the Court to approve the form of the Order prior to formal sentencing.

## 9. ELEMENTS

### Conspiracy (18 U.S.C. § 371)

Beginning on and before November 2005 and continuing up to and including February 5, 2008, within the District of Arizona, and elsewhere, there was an agreement between two or

more persons to commit the crime of Export of Defense Articles without a License in violation of the Arms Export Control Act, Title 22, United States Code, Section 2778;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

### Arms Export Control Act (22 U.S.C. § 2778)

First, that a defendant exported, attempted to export, or caused to be exported from the United States defense articles;

Second, that the defense articles were listed on the United States Munitions List;

Third, that a defendant did so without obtaining a license or written approval from the State Department; and

Fourth, that defendant acted "willfully," that is, that the defendant knew such license or written approval was required for the export of these defense articles and intended to violate the law by exporting them without such license.

10.  **FACTUAL BASIS**

The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt: Beginning on and before November 2005 and continuing up to and including February 5, 2008, within the District of Arizona, and elsewhere, defendant, Floyd D. Stilwell, did knowingly and willfully combine, conspire, confederate, and agree with Guiseppe Luciano Menegazzo Carrasquel, Oscar Rafael Colmenarez Villalobos, Roy Wayne Roby and others both known and unknown to willfully export and cause to be exported from the United States to Venezuela, defense articles designated on the United States Munitions List without first having obtained from the Department of State a license or written authorization for such export.

Defendant, Floyd D. Stilwell, entered into a contract with the Venezuelan Air Force to upgrade and modify T-76 aircraft engines and to provide maintenance training on the engines. T-76 engines are used on the Bronco OV-10 which is a light attack and surveillance aircraft.

1  The Office of Defense Trade Controls, Department of State (DoS), issued a license
2  determination that T-76 engines are considered defense articles, as defined in category VIII(b)
3  of the U.S. Munitions List (USML) of the International Traffic in Arms Regulations (ITAR) and
4  would require a license for export.

5      The original contract was entered prior to the U.S. embargo of defense articles and
6  services to Venezuela. No other corporate officer was aware of the terms of the Venezuelan
7  contract. The original contract contained a "secret addendum" which called for the upgrade and
8  modification of eighteen (18) T-76 engines. On June 6, 2006, of the eve of the effective date of
9  the commencement of the Venezuelan embargo - the date having been announced earlier in the
10 Federal Register and being known to defendant, Floyd D. Stilwell, the contract was amended
11 to reflect a change from T-76 military engines to TPE-331 civilian engines.

12     Stilwell hired Justo Saavedra, (hereinafter Saavedra), as his agent to represent Marsh
13 Aviation on the Venezuelan Air Force contract. It is unclear exactly when Saavedra became the
14 agent for Marsh Aviation. Even after the Venezuelan embargo became effective on August 17,
15 2006, Saavedra began working on a plan to ship the T-76 engines to Venezuela. On September
16 30, 2006, Saavedra e-mailed Lt. Colonel Arquimedes Ramon Velasquez Leon, (hereinafter Lt.
17 Col. Velasquez), and Master Technician 3, Oscar Rafael Colmenarez Villalobos, (hereinafter
18 Colmenarez), advising them that he was working on a way to send the engines to Venezuela in
19 a "DISCRETE" way "under a low profile."

20     The Venezuela Ministry of Defense sent a delegation to Marsh Aviation in early
21 November 2006 to report on the status of the contract. In a report prepared on November 30,
22 2006, the Venezuelan Ministry of Defense was advised that six engines were complete and that
23 Stilwell was ready to ship the engines to Venezuela once his firm received payment for the
24 goods inspected. The report, prepared by Lt. Col. Velasquez, further stated that Stilwell would
25 proceed with assembling the remaining engines once payment was made on the inspected
26 engines. Lt. Col. Velasquez recommended payment be made to Stilwell and the contact be
27 amended to reflect new delivery dates.
28

On January 29, 2007, Stilwell wrote to the Venezuelan Ministry of Defense advising them that Marsh Aviation was willing to proceed once payment was received. On February 22, 2007, the Ministry of Defense authorized a payment to Marsh Aviation in the amount of $2,243,758.50. Instead on March 8, 2007, after receiving payment from Venezuela, Saavedra transferred $1,800,000 into Stilwell's personal bank account.

During this time, Saavedra's business relationship with Stilwell was ending. On March 5, 2007, Roy Roby (hereinafter Roby), a retired Venezuelan Lt. Colonel, emailed Stilwell offering to represent Marsh with the Venezuelan Air Force. In the email, Roby stated that he was aware of the embargo, but there were ways to avoid it in order to supply the Air Force.

On April 10, 2007, Stilwell wrote Colmenarez advising him that Saavedra had resigned and that they could no longer ship the engines to Engines Logistics (Saavedra's company). Stilwell advised that the engines had been ready for shipment prior to the Embargo but the funds were not available to complete the shipment.

On April 16, 2007, Colmenarez advised a captain with the Venezuelan Air Force that Stilwell displayed his best intention to fulfill the contract and that Stilwell was working to change the documentation from military to civil engines due to the embargo on the military engines. On May 11, 2007, Stilwell officially appointed Roby to represent Marsh Aviation in all matters with the Venezuelan Air Force including civil and military. Subsequently, Roby notified Stilwell that it was important to "recertify" and ship the first six engines and prepare a new schedule for the remaining eight engines to be assembled in Venezuela. Roby also advised Stilwell that he was going to inform the Venezuelan Air Force that an additional payment would be required to continue the program.

On July 20, 2007, Roby advised Stilwell that they should disassemble the six engines and send them to Menegazzo. He wrote that Menegazzo would be traveling to Marsh and that Menegazzo would help Stilwell make the necessary coordination. Menegazzo returned to Marsh Aviation on September 16, 2007. Stilwell later advised that they could not register the engines as civil engines. Thereupon, it was agreed that four engines would be disassembled and some alternative method would be determined to export the engines from the United States.

Menegazzo remained in Arizona to finish the disassembly of the engines and to make the necessary arrangements to send the engines to his company in Valencia, Venezuela. On October 17, 2007, Roby provided Stilwell the address on where to ship the engines. On October 24, 2007, Roby emailed Stilwell, telling Stilwell to trust him and that everything would be legal because he has been sending oil equipment to Venezuela for many years. During this time, Colmenarez and Menegazzo disassembled and parts-listed four T-76 engines.

Subsequently, Colmenarez sent Roby an email listing the weight of the boxes he would be shipping with a note that he would send them to Miami as "petroleum parts." On October 25, 2007, the dismantled engines were shipped from Marsh to Miami. The shipping invoice was on Marsh Aviation letterhead and falsely reflected that the boxes contained parts for the "TPE-331" (the civilian aircraft engine designation) and not as petroleum parts. Once in Miami, the engine components were put on three skids by Rudy Export and delivered to King Ocean freight service on or about November 5, 2007. The invoice indicated that the boxes contained aircraft parts from Marsh Aviation destined for Leader Air Service in Venezuela, to the attention Menegazzo. The engines were shipped to Venezuela by ocean freight on or about November 16, 2007.

On December 4, 2007, Stilwell emailed Menegazzo telling him that he would make the chief mechanic for Marsh Aviation available to him in Venezuela. According to Al Martin, Marsh Aviation's chief mechanic, Stilwell offered to send him to Venezuela to assist in reassembling the engines. On January 24, 2008, Roby wrote Stilwell advising him that the Venezuelan Air Force was happy that Marsh sent the engines and that they were willing to do business with Marsh again.

At no time did defendant, Floyd D. Stilwell, nor any other person, obtain a license to export the four T-76 military aircraft engines for the OV-10 Bronco aircraft to Venezuela.

The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have carefully reviewed every part of this Agreement with my attorney. I understand it and I voluntarily agree to it.

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any

such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

10-29-12
Date

FLOYD D. STILWELL
Defendant

### APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I

11

agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

10-29-12
Date

_____
WALTER B. NASH III
Attorney for Defendant

### APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

JOHN S. LEONARDO
United States Attorney
District of Arizona

10/29/12
Date

_____
DAVID A. PIMSNER
Assistant U.S. Attorney

### ACCEPTANCE BY THE COURT

_____
Date

_____
HONORABLE PAUL G. ROSENBLATT
United States District Judge